<u>**NOT FOR PUBLICATION**</u>                                    [Dkt. Ent. 5]

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
_____ :
                                 :
KIMBERLY SIAS                    :
                                 :
                                 :   Civil Action No.
                Plaintiff,       :   10-3773 (RMB/AMD)
                                 :
           v.                    :   OPINION
                                 :
LAW OFFICES OF ANDREU,           :
PALMA, & ANDREU, PL,             :
                                 :
                                 :
                Defendant.       :
_____ :
```

APPEARANCES:

Amy Lynn Bennecoff, Esquire
Kimmel and Silverman P.C.
Executive Quarters
1930 E. Marlton Pike, Suite Q29
Cherry Hill, New Jersey 08003
     Plaintiff's Counsel

Michael J. Shavel, Esquire
Hill Wallack, LLP
777 Township Line Road, Suite 250
Yardley, Pennsylvania 19067-5565
     Defendant's Counsel

**BUMB, UNITED STATES DISTRICT JUDGE:**

     Plaintiff Kimberly Sias (the "Plaintiff") brought this
action alleging violations of the Fair Debt Collection Practices
Act, 15 U.S.C. § 1692, <u>et seq.</u> ("FDCPA").  Defendant, a Florida
debt collection firm, now moves to dismiss the complaint due to
lack of personal jurisdiction and improper venue or, in the

1

alternative, to transfer the action to the United States District Court for the Southern District of Florida.  For the reasons set forth herein, the Court grants Defendant's motion to transfer pursuant to 28 U.S.C. § 1404(a).

## I.  BACKGROUND

Plaintiff's allegations, as set forth in the complaint, are as follows.  Defendant is a Florida debt collection firm with its principal place of business in Miami.  (Compl. ¶ 8.)  Defendant was hired to collect a credit card debt from plaintiff Kimberly Sias (the "Plaintiff"), who at the time resided in Florida.  (Id. ¶¶ 9, 15, 24.)  In August 2009, Defendant filed a motion to confirm an arbitration decision against her in the Circuit Court of the Eighteenth Judicial District of Brevard County, Florida. (Id. ¶ 17.)  After Plaintiff received notice of this motion in August 2009, she contacted Defendant to obtain information about the matter and to request validation.  (Id. ¶¶ 18-19.)  Plaintiff alleges that "Defendant deceptively led [her] to believe that her only option was to go to court."  (Id. ¶ 21.)  She claims that Defendant assured her that she would receive a return call within two days to answer all of her questions, but that Defendant never contacted her, which she believes was "an intentional act to deprive [her] of her opportunity to challenge the arbitration and transmitted judgment."  (Id. ¶¶ 22-23.)

Plaintiff subsequently relocated to New Jersey in September 2009, apparently without challenging Defendant's motion to confirm the arbitration award or notifying the Florida court or Defendant of her new address. (Id. ¶ 24.) Defendant continued to send correspondence and court pleadings to Plaintiff at the Florida address where she resided before moving to New Jersey. (Id. ¶ 25.) Plaintiff alleges that she eventually received "partial paperwork" from Defendant and that she subsequently called Defendant twice between September 2009 and January 2010.[1] (Id. ¶ 27-29.) On or about January 25, 2010, Defendant sent a letter to Plaintiff at her former Florida address stating that it had obtained a judgment against her, that her consumer credit may be negatively impacted, and that under Florida law, it could execute upon the judgment in one or more ways, i.e., garnishment against salary or wages, a levy upon real estate, or an attachment to personal property. (Id. ¶ 32, Ex. A.) Plaintiff alleges that in February 2010, she again spoke with someone at Defendant's firm regarding the alleged debt. (Compl. ¶ 37.)

Plaintiff initiated this action with the filing of a complaint in this Court on July 27, 2010. [Dkt. Ent. 1.] Plaintiff alleges that Defendant violated the FDCPA by, among

---

[1] It is unclear how Plaintiff obtained Defendant's correspondence, since it was addressed to her Florida address, and she had moved to New Jersey. Plaintiff's opposition papers merely state that "several communications were forwarded to her in New Jersey." (Pl.'s Opp. Br. 20.)

other things, "[h]arassing, oppressing or abusing" her and "[u]sing false, deceptive, or misleading representations" in connection with the collection of a debt.  (Compl. ¶ 46.)

## II.  DISCUSSION

Defendant has brought the instant motions asking this Court to dismiss the complaint or, alternatively, to transfer this action to the United States District Court for the Southern District of Florida.[2]  Because this Court holds that a § 1404(a) transfer is appropriate, the Court need not address the remaining motions.

Section 1404(a) of Title 28 of the United States Code provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  The parties do not dispute that this action could have been filed in the Southern District of Florida, where Defendant's principal place of business and sole office is

---

[2] The Court notes that it granted Plaintiff's motion to file an amended opposition brief to Defendants' motions on December 27, 2010, thus deeming the amended opposition brief attached to Plaintiff's motion filed on that date. [Dkt. Ent. 10.]  Thus, the Court now disregards Plaintiff's second amended opposition brief, which she filed on January 14, 2011, [Dkt. Ent. 12], ten days after Defendant filed its reply and the motion became ripe for adjudication.

4

located.  (Pl.'s Opp. Br. 23; Def.'s Br. 20; Andreu Aff. ¶ 4, Dec. 8, 2010.)

"If the proposed alternative forum is appropriate," as it is here, "it is then within the Court's discretion to transfer the action."  Taylor v. Global Credit & Collection Corp., Civ. No. 10-1476, 2010 WL 2521758, *1 (D.N.J. June 14, 2010) (citing Jumara v. State Farm Ins. Co., 55 F.3d 873, 883 (3d Cir. 1995)). Indeed, § 1404(a) is "intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness."  Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988) (internal citations omitted).  "A determination that transfer to another jurisdiction is appropriate represents an 'exercise[ ] of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and the court should a particular action be litigated in one forum rather than another.'"  Lawrence v. Xerox Corp., 56 F. Supp. 2d 442, 450 (D.N.J. 1999)(internal citations omitted).  Thus, the district court "is vested with a large discretion" to determine when transfer should be ordered "for the convenience of parties and witnesses, in the interest of justice."  Solomon v. Continental Am. Life Ins. Co., 472 F.2d 1043, 1045 (3d Cir. 1973).

In deciding a transfer motion under § 1404(a), courts in the Third Circuit consider both private and public interests, as delineated in Jumara, 55 F.3d at 880.  The private interest factors include:

> 1) the plaintiff's forum preference; 2) the defendant's forum preference; 3) where the claim arose; 4) the convenience of the parties as indicated by their relative physical and financial condition; 5) the convenience of the witnesses, but only to the extent they may be unavailable for trial in one of the fora; and 6) the location of books and records (similarly limited to the extent that they could not be produced in the alternative forum).

Id. at 879.  The public interest factors to be considered include:

> 1) the enforceability of the judgment; 2) practical considerations that could make the trial easy, expeditious, or inexpensive; 3) the relative administrative difficulty in the two fora resulting from court congestion; 4) the local interest in deciding local controversies at home; 5) the public policies of the fora; and 6) the familiarity of the trial judge with the applicable state law in diversity cases.

Id. at 879-880.

Here, since Defendant is the moving party, it carries the burden of establishing that a balancing of proper interests weigh in favor of the transfer.  Jumara, 55 F.3d 873, 879; Shutte v. Armco Steel Corp., 431 F.3d 22, 25 (3d Cir. 1970).

**A. Private Interest Factors**

6

With regard to private interests, it is clear that Plaintiff prefers New Jersey and Defendant, Florida.  Defendant argues that Plaintiff's choice of forum should receive little weight because Florida is the location where all of the operative facts occurred, and it was Plaintiff's choice of residence when the collection action commenced.  (Def.'s Br. 20.)  Plaintiff counters that the Court should give her choice of forum considerable deference, because New Jersey is now her home state and because venue is proper under 28 U.S.C. § 1391(b)(2), since "several communications" from Defendant were forwarded to her in New Jersey and thus a "substantial part of the events" giving rise to her claim occurred here.  (Pl.'s Opp. Br. 19-20.) Plaintiff cites <u>Bates v. C & S Adjusters, Inc.</u>, 980 F.2d 865, 868 (2d Cir. 1992), for support.[3]  In <u>Bates</u>, the plaintiff-debtor

---

[3]  Plaintiff also cites for support several FDCPA cases outside of the Third Circuit, where the district court denied the defendant's transfer motion.  The Court easily distinguishes these cases from the one at bar.  In each of them, the plaintiff already lived in the forum state and was contacted there by the foreign debt collector, who then attempted to transfer the case. (Pl.'s Opp. Br. 19 (citing <u>Maloon v. Schwartz, Zweban & Slingsbaum, LLP</u>, 399 F. Supp. 2d 1108, 1110 (D. Haw. 2005) (denying § 1404(a) transfer motion where Florida creditor sent debt collection letter to Hawaii resident at her home in Hawaii); <u>Gonsalves v. Nat'l Credit Sys.</u>, Civ No. N-89-559, 1990 U.S. Dist. LEXIS 20944 (D.Conn. Aug. 15, 1990) (denying § 1404(a) transfer motion where plaintiff, a Connecticut resident, received debt collection letters from creditor at her home in Connecticut and underlying debt was owed to Connecticut creditor); <u>Murphy v. Allen County Claims & Adjustments, Inc.</u>, 550 F. Supp. 128 (S.D. Ohio 1982) (denying § 1404(a) transfer where debt collection letter was received in forum district, where plaintiff resided); <u>Lachman v. Bank of Louisiana in  New Orleans</u>, 510 F. Supp. 753, 760 (N.D. Ohio 1981) (denying § 1404(a) transfer where credit dispute and subsequent communications only arose after plaintiff had moved to forum state)).  Here, Plaintiff resided in Florida when Defendant initiated the underlying debt collection action and began making the disputed communications to her. Thus, the instant action has a significantly greater connection to the foreign forum

7

incurred the debt in question while he resided in the Western District of Pennsylvania, but did not receive notice of the debt collection action until the Postal Service forwarded a letter from the defendant-creditor to his new address in New York.  The Second Circuit reversed the district court's dismissal due to improper venue, finding that a substantial part of the events giving rise to the claim had occurred in New York, since this is where plaintiff received the disputed communications.  Bates, 980 F.2d at 868.  Here, however, the Court contemplates a § 1404(a) motion and considers not whether this claim could have been filed in New Jersey, but rather, whether New Jersey is a more appropriate forum than Florida, in light of the convenience of the parties and witnesses and the interests of justice.

Further, unlike in Bates, Plaintiff Sias moved from Florida to New Jersey only after learning of the debt collection action and the allegedly unlawful communications.  (Compl. ¶¶ 18-23.) Thus, any subsequent harm Plaintiff allegedly suffered in New Jersey would not have occurred in this state, but for her affirmative act in moving here after the debt collection action began.

Although a plaintiff's choice of forum generally carries significant weight, it warrants less deference here, where the

_____

(Florida) than the cases cited by Plaintiff.

case has little connection to the chosen forum.  See, e.g., Job Haines Home for the Aged v. Young, 936 F. Supp. 223, 227-28 (D.N.J. 1996); Newcomb v. Daniels, Saltz, Mongeluzzi & Barrett, Ltd., 847 F. Supp. 1244, 1246 (D.N.J. 1994); AT&T v. MCI, 736 F. Supp. 1294, 1306 (D.N.J. 1990) ("Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference.") (internal citations omitted).  Here, the operative facts occurred largely in Florida.  The underlying action to confirm the arbitration award occurred in Florida, where Plaintiff resided at the time.  Plaintiff alleges that she was served with this motion to confirm the arbitration ("Motion") at her Florida residence, where she admits the Defendant mailed all correspondence and court pleadings.  (Compl. ¶¶ 18, 25.)  The Defendant is a Florida debt collection firm, with its principal place of business and sole office in Miami, Florida.  (Andreu Aff. ¶ 4.)  Defendant made the disputed communications in Florida, and Plaintiff was allegedly harmed by these communications in Florida.  Specifically, Plaintiff alleges that after receiving the Motion, she contacted Defendant's firm, and an unidentified person there "deceptively led [her] to believe that her only option was to go to court." (Compl. ¶¶ 19-21.)  Although Plaintiff alleges that subsequent communications from Defendant were forwarded to her in New Jersey

9

after she relocated there, it is clear that a substantial part of the events giving rise to her claims occurred in Florida. Clearly, a Florida court would have heard this case but for Plaintiff's decision to relocate to New Jersey after learning of Defendant's attempts to collect on her alleged debt.

The Court notes that Plaintiff concedes that "a portion of the events giving rise to the Complaint" occurred in Florida and urges the Court to transfer this case there rather than dismiss it.  (Pl.'s Opp. Br. 23.)  Further, both parties agree that relevant documents and witnesses are also located in Florida. (Def.'s Br. 18-19; Pl.'s Opp. Br. 23.)

The Court also considers the convenience of the parties as indicated by their relative physical and financial conditions. Plaintiff argues that Defendant, a law firm, is in a "far better financial condition than Plaintiff to travel to New Jersey for Court appearances than Plaintiff would be to travel to Florida." (Pl.'s Opp. Br. 19.)  Defendant argues that Plaintiff cannot claim she is inconvenienced by litigating the action in Florida, because that was her choice of residence when the collection action commenced and where "all of the debt collection proceedings took place."  (Def.'s Br. 20.)  The Court understands that Plaintiff may incur additional costs as a result of litigating her suit in Florida, but the Court also weighs that

10

Defendant may face additional costs if forced to litigate this case in New Jersey.  Since there is no connection to this forum other than Plaintiff's relocation here after the debt collection proceedings and allegedly unlawful communications began, this balancing weighs in favor of Defendant.  Further, Plaintiff has not indicated any difficulty in securing Florida counsel, and since this is a fee-shifting case under the FDCPA, she would only bear the additional costs (if any) of litigating this action in Florida if she does not succeed on the merits.[4]  Thus, on balance, the private interests weigh in favor of transfer.

**B. Public Interest Factors**

With regard to the public factors, Defendant argues that the relative docket conditions of the two districts favor transfer because the average length of time from filing to trial is shorter in the Southern District of Florida than in the District of New Jersey.  (Def.'s Br. 19.)  Defendant further contends that a transfer would prevent unnecessary inconvenience and expense to the parties and witnesses, particularly since most of the witnesses will be attorneys from Defendant's law firm, and they all reside in Florida.  (Def.'s Br. 19; Andreu Aff. ¶ 15.)

---

[4] The Court notes that Plaintiff's argument that a transfer would "clearly" increase her costs and attorney's fees is mere speculation.  (Pl.'s Opp. Br. 21.)  She provides no support for this, and the Court has no reason to believe that attorney's fees in Florida are higher than in New Jersey.

Plaintiff asserts the vague argument that the "intent of the FDCPA should also not be overlooked," although she does not elaborate on how the intent of the FDCPA weighs against transfer, except to suggest that she will feel the "harmful effects" of Defendant's actions in New Jersey.  However, the Court again notes that the actions giving rise to Plaintiff's claim occurred in Florida, and she felt the effects of this alleged harm in Florida until she chose to relocate to New Jersey.  Thus, the Court rejects this argument.

In addition, Plaintiff argues that a transfer to Florida would increase her attorney's fees and costs, making settlement more difficult, since this is a fee-shifting case.  The Court finds this argument unpersuasive and speculative, particularly since Plaintiff has provided the Court with no evidence that her attorney's fees and costs would increase as a result of this transfer.  See, supra, n.4.

Plaintiff argues that there is no local interest in having her case decided in Florida, because its citizens do not have a "horse in this race." (Pl.'s Opp. Br. 21.)  The Court disagrees.  The citizens of southern Florida have a strong interest in ensuring that the region's debt collectors abide by federal laws and do not engage in abusive or deceptive practices.  Since Defendant's firm does not have regular dealings in New Jersey, (Andreu Aff. ¶ 8), Florida citizens are far more likely to be

12

affected by its allegedly deceptive business practices than New Jersey citizens.

Further, since New Jersey has little connection to this case, the burden of jury duty should be imposed on Florida rather than New Jersey residents.  Ferens v. John Deere Co., 494 U.S. 516, 529-30 (1994), superseded by statute on other grounds ("Jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.") (internal citations omitted).

Thus, the public interest factors also support transferring this action.

**III. CONCLUSION**

For the foregoing reasons, the Defendant has sufficiently shown that a transfer to the Southern District of Florida is warranted.  Consideration of the private and public interests weigh in favor of such a transfer.  Accordingly, Defendant's motion to transfer is **GRANTED** and Defendant's remaining motions are **DISMISSED AS MOOT.**  An accompanying Order will issue this date.


Dated: February 2, 2011                    s/Renée Marie Bumb
                                           RENÉE MARIE BUMB
                                           United States District Judge


13